### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
RYAN TERBUSH                 :    Civ. No. 3:15CV01339(SALM)
                             :
v.                           :
                             :
MITCHELL                     :    February 17, 2017
                             :
-----------------------------x
```

### RULING ON DEFENDANT'S SECOND MOTION FOR
### SUMMARY JUDGMENT [Doc. #43]

Plaintiff Ryan Terbush ("plaintiff") brings this action against defendant Department of Correction Captain Mitchell ("defendant") pursuant to 42 U.S.C. §1983, alleging that defendant was deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution. See Doc. #37, Second Amended Complaint.

Pending before the Court is defendant's Second Motion for Summary Judgment. [Doc. #42].[1] Plaintiff has filed a Memorandum

---

[1] Defendant previously filed a Motion for Summary Judgment on July 1, 2016. [Doc. #28]. On July 23, 2016, plaintiff filed a Motion to Amend/Correct the Amended Complaint [Doc. #33], along with a memorandum in opposition to the Motion for Summary Judgment [Doc. #34]. On August 15, 2016, the parties filed a Consent Notice regarding the Motion to Amend/Correct the Amended Complaint, in which counsel for defendant represented that he had no objection to the motion provided that he was allowed to file a second motion for summary judgment directed towards the allegations in the Second Amended Complaint and that discovery remained closed. See Doc. #35 at 1. The Court granted plaintiff's Motion to Amend/Correct the Amended Complaint, and set a filing deadline for the Second Motion for Summary Judgment. See Doc. #36.

of Law in Opposition to defendant's motion [Doc. #44], to which defendant has filed a reply [Doc. #45].

For the reasons articulated below, the defendant's Second Motion for Summary Judgment [**Doc. #43**] is **GRANTED.**

## I.    Background

Plaintiff filed his complaint on September 8, 2015. [Doc. #1]. Following two amendments of his initial pleading, plaintiff now proceeds under the operative Second Amended Complaint (the "Second Amended Complaint"). [Doc. #37]. The Second Amended Complaint alleges a single count against defendant. Plaintiff claims that his Eighth Amendment rights were violated when defendant deprived plaintiff of the opportunity to attend a medical appointment, resulting in plaintiff's "physical health [having] been gravely jeopardized." See generally Doc. #37 at ¶¶10-16. Defendant now moves for summary judgment. [Doc. #43].

## II.   <u>Legal Standard</u>

> The standards governing summary judgment are well-settled. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)[.]

Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). Summary judgment is proper if, after discovery, the

nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (alterations added).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists."[2] Marvel Characters, 310 F.3d at 286. The moving party may discharge this burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325; see also Goenaga v. Mar. of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.").

In deciding a motion for summary judgment, "[t]he court must resolve all ambiguities and draw all inferences in favor of the nonmoving party[.]" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home

---

[2] A fact is "material" if it might affect the outcome of the suit under the substantive law applicable to the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (quoting Marvel, 310 F.3d at 286) (internal quotation marks omitted). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphases in original).

"In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir. 1997)) (internal quotation marks omitted). Where, as here, "a summary judgment motion is supported or opposed by affidavits, those 'affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" Id. at 310 (quoting Fed. R. Civ. P. 56(e)). Therefore,

> [i]n order to defeat a properly supported summary judgment motion, the opposing party must proffer admissible evidence that "set[s] forth specific facts" showing a genuinely disputed factual issue that is material under the applicable legal principles. Fed. R. Civ. P. 56(e); see, e.g., Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004)[.] A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions

4

that are conclusory, see, e.g., Kulak v. City of New
York, 88 F.3d 63, 71 (2d Cir. 1996), or based on
speculation, see, e.g., id. ("Though we must accept as
true the allegations of the party defending against the
summary judgment motion, drawing all reasonable
inferences in his favor, ... conclusory statements,
conjecture, or speculation by the party resisting the
motion will not defeat summary judgment.")[.]

Major League Baseball, 542 F.3d at 310 (alterations added).

## III. **Facts**

The Court sets forth only those facts deemed necessary to
an understanding of the issues raised in, and decision rendered
on, this Second Motion for Summary Judgment. The following
factual summary is based on plaintiff's Second Amended Complaint
[Doc. #37], defendant's Local Rule 56(a)1 Statement of Material
Facts [Doc. #43-12] ("Def. 56(a)1 Stmt"), plaintiff's Local Rule
56(a)2 Statement, Response to Defendant's Claims of Fact [Doc.
#44-1] ("Pl. 56(a)2 Stmt"), and accompanying affidavits,
depositions and exhibits, to the extent that they are admissible
evidence. The following factual summary, therefore, does not
represent factual findings of the Court. All facts stated below
are undisputed (or have been deemed undisputed) unless stated
otherwise.

Plaintiff currently is, and at the time of the events at
issue was, incarcerated within the Connecticut Department of
Correction ("DOC"). [Def. 56(a)1 Stmt, ¶¶2-4; Pl. 56(a)2 Stmt,
¶¶2-4 (admitted)]. At the time of the incident in question,

plaintiff was housed at Garner Correctional Institution located in Newtown, Connecticut ("Garner"). [Def. 56(a)1 Stmt, ¶4; Pl. 56(a)2 Stmt, ¶4 (admitted)]. During plaintiff's incarceration, he has received medical care for a variety of issues, including foraminal stenosis at C4-C5, and other spinal-related problems. [Def. 56(a)1 Stmt, ¶¶6, 8, 93; Pl. 56(a)2 Stmt, ¶¶6, 8, 93 (admitted)]. Sometime before July 10, 2013, plaintiff underwent a spinal fusion surgery, which fused his spinal column at C4-C5 and C6-C7. [Def. 56(a)1 Stmt, ¶9; Pl. 56(a)2 Stmt, ¶9 (admitted)]. After this surgery, plaintiff was followed by the University of Connecticut Health Center, Division of Neurosurgery ("UConn Neurosurgery"). [Def. 56(a)1 Stmt, ¶10; Pl. 56(a)2 Stmt, ¶10 (admitted)]. In the months before the date and incident in question, plaintiff was seen by UConn Neurosurgery on July 10, 2013; October 11, 2013; and June 13, 2014. [Def. 56(a)1 Stmt, ¶¶98, 100, 102; Pl. 56(a)2 Stmt, ¶¶98, 100, 102 (admitted)]. During his October 11, 2013, and June 13, 2014, appointments, plaintiff appeared in no acute distress and had a good range of motion of his cervical spine. [Def. 56(a)1 Stmt, ¶¶101, 103; Pl. 56(a)2 Stmt, ¶¶101, 103 (admitted)].

Plaintiff's claim relates to a single encounter with defendant which allegedly resulted in plaintiff not attending a medical appointment with UConn Neurosurgery on December 12, 2014. [Def. 56(a)1 Stmt, ¶¶4-5, 11, 35; Pl. 56(a)2 Stmt, ¶¶4-5,

11, 35 (admitted)]. Two days before this appointment, plaintiff
was placed in in-cell restraints, consisting of handcuffs
connected to ankle shackles by a chain, which limited his
mobility. [Def. 56(a)1 Stmt, ¶¶14-16; Pl. 56(a)2 Stmt, ¶¶14-16
(admitted)]. As a result, plaintiff claims that he was unable to
sufficiently clean himself or brush his teeth prior to the
December 12, 2014, medical appointment. [Def. 56(a)1 Stmt, ¶¶17-
18; Pl. 56(a)2 Stmt, ¶¶17-18 (admitted)]. On December 12, 2014,
DOC arranged to transport plaintiff from Garner to the
University of Connecticut Health Center in Farmington,
Connecticut, for plaintiff to meet with a neurosurgery
clinician. [Def. 56(a)1 Stmt, ¶12; Pl. 56(a)2 Stmt, ¶12
(admitted)].

The parties dispute what occurred next. Defendant contends
that "[p]laintiff was not cooperative with DOC staff when they
arrived at his cell to bring him to the vehicle that was
scheduled to transport him[,]" that plaintiff "did not want to
leave his cell without cleaning himself first[,]" and that
"[p]laintiff's reluctance to leave his cell delayed the
transportation." [Def. 56(a)1 Stmt, ¶¶19-21]. Plaintiff,
however, contends that he spent the night before the December
12, 2014, appointment asking guards whether he could shower and
brush his teeth before the appointment. [Pl. Statement of
Material Facts, Doc. #44-1, ¶2]. On the morning of the

appointment, plaintiff again requested to shower, to which the defendant responded, "No." Id. at ¶3. Plaintiff next asked to brush his teeth, which request was denied by defendant because there was inadequate time to so do. Id. at ¶¶4-5. Plaintiff then responded that he did not "want to go if [he could not] even, you know, wash up and brush my teeth." Id. at ¶6. Plaintiff then contends that defendant stated plaintiff was refusing a medical appointment and left plaintiff's cell, and that plaintiff pleaded with defendant to let him attend the appointment. Id. at ¶¶7-8.

On December 12, 2014, defendant held the rank of Correctional Captain and served as the Housing Unit Manager of the restrictive housing unit and Garner. [Def. 56(a)1 Stmt, ¶¶23-24; Pl. 56(a)2 Stmt, ¶¶23-24 (admitted)]. On December 12, 2014, defendant's duties did not include facilitating transportation to medical appointments, scheduling or rescheduling medical appointments, or supervision of medical staff. [Def. 56(a)1 Stmt, ¶25; Pl. 56(a)2 Stmt, ¶25 (admitted)]. On December 12, 2014, defendant would not have been called to plaintiff's cell unless there was an issue that could not be addressed by defendant's subordinates. [Def. 56(a)1 Stmt, ¶26; Pl. 56(a)2 Stmt, ¶26 (admitted)].

When defendant arrived at plaintiff's cell, he was informed that plaintiff's delay in leaving the cell left little time to

transfer plaintiff to the transportation vehicle in time to make the UConn Neurosurgery appointment. [Def. 56(a)1 Stmt, ¶27; Pl. 56(a)2 Stmt, ¶27 (admitted)]. Defendant did not know what type of medical appointment plaintiff was scheduled for that day. [Def. 56(a)1 Stmt, ¶32; Pl. 56(a)2 Stmt, ¶32 (admitted)]. Defendant also had no knowledge of plaintiff's medical conditions or treatment as related to plaintiff's spinal injuries. [Def. 56(a)1 Stmt, ¶33].[3] Plaintiff never told defendant about his medical conditions because "[t]hat's not something [he] would discuss with the [defendant]." [Def. 56(a)1 Stmt, ¶¶75-76; Pl. 56(a)2 Stmt, ¶¶75-76 (admitted)]. When defendant encountered plaintiff, plaintiff again stated that he wanted to shower and clean himself before going to the medical appointment. [Def. 56(a)1 Stmt, ¶36; Pl. 56(a)2 Stmt, ¶36 (admitted)]. Defendant told plaintiff that he could not shower or clean himself before the appointment, as he believed that there was not enough time to do so and timely attend the

---

[3] Plaintiff denies that on the day in question "the defendant had no knowledge about plaintiff's medical conditions or treatment." [Pl. 56(a)2 Stmt, ¶33]. In support of this denial, plaintiff cites to page 102 of his deposition testimony, presumably the portion asserting that plaintiff's "face was really swollen, black and blue and swollen, and I believe that that was part of the reason that I wasn't – he didn't want me to go to the appointment." Id.; see also Doc. #44-2, May 19, 2016, Deposition of Ryan Terbush ("Pl. Depo."), at 102:18-22. This however, does not refute the statement that defendant had no knowledge about plaintiff's spinal-related medical conditions, which form the basis of the Second Amended Complaint's allegations.

appointment. [Def. 56(a)1 Stmt, ¶¶28, 37-38; Pl. 56(a)2 Stmt, ¶¶28, 37-38 (admitted)]. Defendant also believed that plaintiff's medical appointment could be rescheduled if needed. [Def. 56(a)1 Stmt, ¶77; Pl. 56(a)2 Stmt, ¶77 (admitted)]. Ultimately, plaintiff did not attend the December 12, 2014, appointment with UConn Neurosurgery. [Def. 56(a)1 Stmt, ¶¶40, 104; Pl. 56(a)2 Stmt, ¶¶40, 104 (admitted)].

Plaintiff received a consultation with UConn Neurosurgery on June 26, 2015, where a clinician discussed plaintiff's medical options. [Def. 56(a)1 Stmt, ¶¶105-106; Pl. 56(a)2 Stmt, ¶¶105-106 (admitted)]. During this consultation plaintiff requested pain medication. [Def. 56(a)1 Stmt, ¶107; Pl. 56(a)2 Stmt, ¶107 (admitted)]. The clinician recommended an epidural steroid injection, which plaintiff refused. [Def. 56(a)1 Stmt, ¶¶108-109; Pl. 56(a)2 Stmt, ¶¶108-109 (admitted)]. Plaintiff received another consultation with UConn Neurosurgery on February 12, 2016, at which again a clinician recommended epidural steroid injections, but plaintiff refused, claiming that the injections do not work. [Def. 56(a)1 Stmt, ¶¶110-112; Pl. 56(a)2 Stmt, ¶¶110-112 (admitted)]. During this consultation plaintiff requested an increase in his pain medication and indicated that he was not interested in surgical intervention. [Def. 56(a)1 Stmt, ¶¶113-114; Pl. 56(a)2 Stmt, ¶¶113-114 (admitted)].

Defendant contends that there is no evidence to suggest that plaintiff suffered any injury, harm, or exacerbation of a preexisting condition as a result of the missed appointment, and that in fact plaintiff suffered no such injury, harm or exacerbation of his spinal condition as a result of the missed appointment. [Def. 56(a)1 Stmt, ¶¶43-44]. Plaintiff, however, denies these assertions and contends that as a result of the missed appointment he has: (1) suffered from agonizing pain; and (2) lost any possibility of surgical treatment for his condition, because by the time his appointment was rescheduled, there was not enough time remaining in his sentence to carry out the procedure. [Pl. Statement of Material Facts, Doc. #44-1, ¶11; see also Doc. #44-2, Pl. Depo. at 22:5-25, 69:16-25].[4]

## IV.   Discussion

Defendant moves for summary judgment on the following grounds: (1) plaintiff failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996, 42 U.S.C. §1997e(a); (2) there is no genuine issue of material fact regarding defendant's alleged deliberate indifference; and (3) defendant is entitled to qualified immunity from suit and from any judgment for money damages. See

---

[4] Consistent with the plaintiff's briefing, references to the page numbers of plaintiff's deposition refer to the numbers set forth on the deposition transcript, and not the ECF header page numbers.

generally Doc. #43-1. Defendant's second argument, which
directly addresses the substance of plaintiff's deliberate
indifference claim, contends more specifically that: (a)
defendant knew of no excessive risk to plaintiff's serious
medical needs; (b) plaintiff's medical need was not objectively
serious; and (c) plaintiff cannot establish causation of a
legally cognizable injury under the Eighth Amendment. See id. at
17-28. Plaintiff responds: (1) willful ignorance of the facts is
not a defense to a claim of deliberate indifference; (2) casual
observation would have revealed "plaintiff had at a minimum
suffered serious head and facial injuries[;]" (3) medical need
does not need to be "that severe" for application of the Eighth
Amendment's protections; (4) defendant's conduct was not
objectively reasonable and therefore qualified immunity does not
apply; and (5) plaintiff exhausted the administrative remedies
available to him. See Doc. #44 at 4-6.

## A. **Deliberate Indifference Standard**

"The Eighth Amendment prohibits the infliction of cruel and
unusual punishments[,] ... [which] includes punishments that
involve the unnecessary and wanton infliction of pain." Chance
v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal
quotation marks and citations omitted) (alterations added). "The
Cruel and Unusual Punishments Clause of the Eighth Amendment
imposes a duty upon prison officials to ensure that inmates

receive adequate medical care. Yet not every lapse in medical care is a constitutional wrong. Rather, 'a prison official violates the Eighth Amendment only when two requirements are met.'" Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (internal citation omitted) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "The first requirement is objective: the alleged deprivation of adequate medical care must be 'sufficiently serious.' The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013) (internal citations and quotation marks omitted).

The first requirement is that alleged deprivation of adequate medical care must be "sufficiently serious." See id. This requirement is objective. See id. "A condition is objectively serious if it poses an unreasonable risk of serious damage to a prisoner's future health." Guilbert v. Sennet, 235 F. App'x 823, 826 (2d Cir. 2007) (internal quotation marks omitted) (citing Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002)). "Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." Salahuddin, 467

F.3d at 280 (internal quotation marks omitted) (quoting Chance, 143 F.3d at 702). "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) (internal quotation marks and emphasis omitted) (citing Chance, 143 F.3d at 702).

The second requirement is that the "charged officials must be subjectively reckless in their denial of medical care." Spavone, 719 F.3d at 138 (citation omitted.). This requirement is subjective, meaning that "the charged official must act with a sufficiently culpable state of mind." Id. (citing Wilson v. Seiter, 501 U.S. 294, 300 (1991)). With respect to the subjective requirement, the Supreme Court has explained that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Farmer, 511 U.S. at 837. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Id. at 836. Rather, deliberate indifference is a mental state comparable to "recklessness as used in the criminal law[.]" Id. at 839.

## B. <u>Analysis – Subjective Requirement</u>

Although defendant does not concede that plaintiff can sustain his burden of proving at trial the objective requirement under the Second Circuit's Eighth Amendment analysis, defendant focuses his arguments on the subjective prong of the two-part inquiry. See Doc. #42-1 at 17-27. Accordingly, the Court begins its analysis there.

Defendant first argues that plaintiff cannot demonstrate that on December 12, 2014, defendant had actual knowledge of an excessive risk to plaintiff's serious medical needs, or that there was a risk so obvious that defendant must have known of it. See id. at 18. For the reasons set forth below, the Court finds that defendant has satisfied his summary judgment burden by pointing to an absence of evidence which would support the subjective prong of this Circuit's Eighth Amendment test. See Garden Catering-Hamilton Ave., LLC v. Wally's Chicken Coop, LLC, 30 F. Supp. 3d 117, 127 (D. Conn. 2014) ("Where, as here, a defendant seeks to show that a plaintiff cannot sustain its burden at trial, the defendant's burden on summary judgment 'will be satisfied if he can point to an absence of evidence to

support an essential element of the nonmoving party's claim.'"
(quoting <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d
14, 18 (2d Cir. 1995))).

Plaintiff points to no evidence to support a finding that
defendant had actual knowledge of plaintiff's spinal condition.
Plaintiff specifically testified that he never told defendant
about his medical condition, and that such a subject was "not
something he would discuss with the [defendant]." Doc. #44-2,
Pl. Depo. at 80:6-10. This is consistent with defendant's
affidavit stating that prior to and during the encounter he had
no knowledge of plaintiff's medical history, conditions,
treatments or ailments. <u>See</u> Doc. #43-4 at ¶11. Although
plaintiff denies in his response to defendant's Rule 56
statement that defendant had no knowledge of plaintiff's medical
condition or treatment, the portion of plaintiff's deposition
relied upon to refute this fact is inapposite. <u>See</u> Doc. #44-2,
Pl. Depo. at 102:18-22. Indeed, it refers to plaintiff having a
bruised and swollen face on the date in question and does not
address the medical issue actually raised in the Second Amended
Complaint. <u>See generally</u> Doc. #37.[5] This is not enough to create
a genuine issue of material fact in light of plaintiff's
admission in his deposition that defendant had no knowledge of

---

[5] This new theory of deliberate indifference is further
addressed, <u>infra</u>.

the specific medical condition underlying the Second Amended Complaint. Further, it is uncontroverted that defendant did not know what type of medical appointment plaintiff was scheduled for on the day in question. See Def. 56(a)1 Stmt, ¶32; Pl. 56(a)2 Stmt, ¶32 (admitted).

Plaintiff responds that defendant's "willful ignorance of the facts is no excuse to a claim of deliberate indifference. Indeed, it is the very definition of deliberate indifference to know that a prisoner has a medical appointment which the department considers serious enough to transport him in solo transport from Newtown to Farmington, yet not to check the available record to ascertain the nature of the problem." Doc. #44 at 4. Notably, plaintiff does not support this argument with any citation to case law or the record, and the Court finds no support for it.

First, there is nothing in the record to support a finding that defendant knew that plaintiff was to be transported "solo." Defendant also asserts that on the date in question, December 12, 2014, the nursing staff advised defendant that plaintiff's medical appointment could be rescheduled if needed. See Def. 56(a)1 Stmt, ¶30. Although plaintiff asserts that he has no knowledge of this conversation, he offers nothing to refute this statement, which goes to defendant's state of mind on the date in question. See Smith v. City of N.Y., 388 F. Supp. 2d 179, 182

(S.D.N.Y. 2005) ("It is well established, though, that statements offered for their effect on the listener are non-hearsay." (citing United States v. Garcia, 900 F.2d 571, 576 (2d Cir. 1990))). Additionally, a supervisory official, such as defendant, is "generally entitled to delegate medical responsibility to medical staffs and [is] entitled to rely on the opinion of medical staff concerning the proper course of treatment." Abdush-Shahid v. Coughlin, 933 F. Supp. 168, 183 (N.D.N.Y. 1996) (collecting cases).

Alternatively, plaintiff contends that "it was obvious even upon casual observation that the plaintiff had at minimum suffered serious head and facial injuries, for those were obvious upon the plaintiff's face[,]" and therefore "defendant's claim of ignorance cannot excuse him here." Doc. #44 at 4-5 (citing Exhibit A, p. 102). This allegation, "however, is nowhere to be found in the [Second] Amended Complaint, and an opposition brief is not the place to raise new allegations." Malmsteen v. Universal Music Grp., Inc., 940 F. Supp. 2d 123, 135 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); see also Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010) (affirming district court's decision to not consider claims that were raised for the first time in opposition to a summary judgment motion). The alleged injuries to plaintiff's face do not form the basis of plaintiff's Second

Amended Complaint, which raises only plaintiff's "severe spinal problems" as the predicate of plaintiff's deliberate indifference claim. See Doc. #37, at ¶¶6-8, 16. "Because [plaintiff] failed to include this claim in his [Second] Amended Complaint, instead raising it for the first time in opposition to summary judgment, it is waived." Malmsteen, 940 F. Supp. 2d at 135 (collecting cases); see also Bonnie & Co. Fashions v. Bankers Trust Co., 170 F.R.D. 111, 119 (S.D.N.Y. 1997) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.").[6] Accordingly, "[p]laintiffs cannot survive a summary judgment motion by contradicting their own pleadings in an effort to raise a genuine issue of fact. A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion." Southwick Clothing LLC v. GFT (USA) Corp., No. 99CV10452(GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) (citations omitted).

> However, under Federal Rule of Civil Procedure 15(b), the Court may consider claims outside those raised in the pleadings "so long as doing so does not cause prejudice" to defendants. Cruz v. Coach Stores, Inc., 202 F.3d 560, 569 (2d Cir. 2000). Accordingly, in contrast to claims that are "entirely new," claims that

---

[6] The Court notes that the missed appointment was with the UConn Neurosurgery department. It is not clear how a neurosurgery consultation would have been an appropriate response to facial cuts and bruises.

> are "related to or are mere variations of previously
> pleaded claims ... may be raised on a motion for summary
> judgment where the defendant was clearly on notice from
> the complaint and was not unfairly prejudiced." <u>Henry
> v. Metro. Transp. Auth.</u>, No. 07CV3561 (DAB), 2014 WL
> 4783014, at *10 (S.D.N.Y. Sept. 25, 2014) (internal
> quotation marks and citations omitted); <u>accord</u> <u>Ragusa v.
> Malverne Union Free Sch. Dist.</u>, 381 F. App'x 85, 89-90
> (2d Cir. 2010) (summary order) (district court should
> have considered new claim where complaint "was
> sufficient to place defendants on notice that
> [plaintiff] intended to pursue such an argument").

<u>Simpson v. Town of Warwick Police Dep't</u>, 159 F. Supp. 3d 419,

441 (S.D.N.Y. 2016), <u>appeal dismissed</u> (June 15, 2016).

Here, the allegations of the Second Amended Complaint are

insufficient to place defendant on notice that plaintiff

intended to pursue a deliberate indifference claim on the basis

of the "obvious" injuries to plaintiff's head and face. Any such

injuries are not related to or mere variations of the originally

pleaded injury. Indeed, there is no mention of any facial/head

injuries in the Second Amended Complaint; rather, such injuries

appear to have been referenced only in passing during

plaintiff's deposition. Defendant <u>would</u> be prejudiced if the

Court were to now consider such a claim. Plaintiff has already

been afforded an opportunity to amend his amended complaint

<u>after</u> defendant had filed a motion for summary judgment. <u>See</u>

Doc. ##28, 33, 36. More significantly, the Second Amended

Complaint, which was filed three months <u>after</u> plaintiff's May

19, 2016, deposition, at which the facial injuries were

discussed, failed to include any allegations relating to any facial/head injuries. This is now the second motion for summary judgment filed by defendant, and if the Court were to consider this new theory of deliberate indifference, then presumably, defendant would seek to file a third motion for summary judgment and/or a motion for leave to conduct further discovery on this issue. This simply is not a reasonable demand for the plaintiff, or the Court, to make of defendant at this juncture in the case.

    To establish the subjective prong of the deliberate indifference standard, plaintiff must prove that defendant had actual knowledge of an excessive risk to inmate health or safety, or that such risk was so obvious that the official must have known it. See Brock v. Wright, 315 F.3d 158, 164 (2 Cir. 2003); Farmer, 511 U.S. at 842. Here, defendant has sustained his summary judgment burden by pointing to an absence of evidence which would support the subjective requirement of plaintiff's Eighth Amendment claim. See Wally's Chicken Coop, 30 F. Supp. 3d at 127; see also id. ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (citing Celotex, 477 U.S. at 323)); Tyus v. Newton, No. 3:13CV01486(SRU), 2016 WL 6090719, at *3 (D. Conn. Oct. 18, 2016) ("If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to

which he bears the burden of proof, then summary judgment is appropriate." (citing <u>Celotex</u>, 477 U.S. at 322)). Therefore, the Court **GRANTS** defendant's Second Motion for Summary Judgment. In light of this conclusion, the Court need not address the other arguments raised by defendant.

## V.   <u>Conclusion</u>

Therefore, for the reasons stated, defendant's Second Motion for Summary Judgment [**Doc. #43**] is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the defendant.

This is not a Recommended Ruling. The parties consented to proceed before a United State Magistrate Judge on May 10, 2016 [Doc. #23], with any appeal to be made directly to the Court of Appeals. <u>See</u> Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at New Haven, Connecticut, this 17th day of February 2017.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
